UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

FN BUILDING LLC,                                 Case No. 11-46947
                                                         Chapter 11
                      Debtor.                    Hon. Marci B. McIvor
_____

### RESPONSE OF HONIGMAN MILLER SCHWARTZ AND COHN LLP
### IN SUPPORT OF RECEIVER'S MOTION FOR FINAL ORDER
### AUTHORIZING USE OF CASH COLLATERAL

Honigman Miller Schwartz and Cohn LLP ("Honigman"), by its attorneys, Dickinson Wright PLLC, submits this Response in Support of the Receiver's Motion for Final Order Authorizing Use of Cash Collateral [Doc. #28].

### Introduction

The Debtor's sole asset is a 25-story landmark office building located in downtown Detroit commonly known as the First National Building (the "Building"). The Building is an icon of the Detroit cityscape that has had numerous notable tenants in its history, including current tenants, the United Way of Southeastern Michigan, Lewis & Mundy, P.C., and Honigman, who have persevered for many years in their dedication to retain a strong presence in Detroit, despite having to endure the deplorable conditions that existed due to the Debtor's mismanagement of the Building.

The Debtor is owned, operated and controlled by Alexander Dembitzer and his mother, Jacqueline Fried (together, the "Dembitzers"). When controlled by the Dembitzers, the Debtor: (a) defaulted on tens of millions of dollars of loans; (b) kept cash generated by the rent roll for the Building instead of using it to pay necessary operating expenses; (c) mismanaged the Building, allowing it to fall into disrepair; and (d) took $500,000 in insurance proceeds intended

1

to repair flood and related electrical damage to the Building instead of affecting the needed repairs. The Debtor, as controlled by the Dembitzers, persisted in ignoring the Building's decaying, and often, dangerous conditions, causing Honigman to have no choice but to resort to legal action against the Debtor for breach of lease, and causing PNC Bank, the Debtor's secured lender at the time, to seek the appointment of a receiver for the Building.

Since 2009, many overdue repairs to the Building have been completed and the general condition of the Building has improved. However, the Debtor did not make these repairs but rather, these improvements were due entirely to the efforts of O'Keefe & Associates Consulting, LLC (the "Receiver") who was appointed receiver of the Building pursuant to an order issued by the Wayne County Circuit Court on December 16, 2009 in the context of the mortgage foreclosure proceeding of *National City Bank v. FN Building LLC, et al.,* Case No. 09-021031-CK (the "Foreclosure Proceedings"), with Finsilver Friedman Management Corporation acting as property manager. The Receiver has been instrumental in sustaining the ongoing operations of the Building by providing for the continued protection, preservation and maintenance of the Building - basic and necessary maintenance, repairs and improvements required to ensure the safety of the Building's tenants as well as the general public who use and visit the Building on a daily basis.

The Final Order Authorizing Use of Cash Collateral proposed by the Receiver is virtually identical to the first and second interim Orders with the only notable exception being that the Final Order will extend the use of cash collateral to July 31, 2011. To ensure the continued safety and welfare of the thousands of people who enter and occupy the Building every day, the Receiver must continue to utilize the cash flow generated through the rent roll in the ongoing operations of the Building. Since the appointment of the Receiver, the conditions in the Building

have shown marked improvement and it is important that the Receiver be able to continue to use cash collateral to operate the Building in accordance with a budget in the same manner in which he has been doing under the first and second interim Orders. For this reason, Honigman lends its support to the Receiver's Motion for Final Order Authorizing Use of Cash Collateral.

**Background**

Honigman, one of the most widely-known law firms in Michigan, is the largest tenant in the Building, occupying approximately five of the 25 floors, and employing 400 individuals. Honigman has been a tenant in the Building since 1948. Having safe, reliable and well maintained premises available to its attorneys, support staff, clients and visitors is crucial to the operation of Honigman's business, maintaining its reputation and the goodwill it has generated since its formation in 1948, and providing a safe working environment for its employees.

In 2009, National City Bank (now known as PNC Bank) (the "Bank") sought to have a receiver appointed for the Building by commencing the Foreclosure Proceeding. The Bank held a mortgage and other security on the Building and its rents.

Honigman supported the Bank's efforts to have a receiver and a professional commercial property manager appointed for the Building because the Dembitzers were siphoning off the cash generated by the Debtor's rent roll, rather than paying operating expenses and effecting needed repairs. The primary evidentiary support for the Bank's motion for a receiver was an affidavit from Honigman's Chief Operating Officer, Robert Kubic (the "Kubic Affidavit," copy attached as Exhibit A), describing the unsafe and unseemly conditions in the Building while it was effectively managed by the Dembitzers, including: flooding of the entire Stairwell A from the 24th floor to the ground floor, which caused a dangerous situation effecting critical components of the Building's electrical infrastructure which ultimately lead to evacuation of the entire

Building, while further damaging the Building's already broken life safety system; unreliable or unavailable heat in the Building due to the Debtor's failure to pay the heating supplier; lack of hot water supply to Honigman's premises for a five-week period; inconsistent and unreliable air conditioning to Honigman's premises; water damage to an emergency stairwell door that prohibited egress into this stairwell in case of fire; frequent malfunction of the Building's elevators; and cockroaches in the Building's offices, bathrooms and hallways. *Kubic Affidavit*, ¶¶ 5 - 8.

The mismanagement of the Building by the Debtor is further evidenced by the affidavit of Brian Bass, Vice-President of Property Management at Finsilver (the "Bass Affidavit," copy attached as Exhibit B). Finsilver was the property manager of the Building from approximately September, 2002 through September, 2005. In 2009 after the appointment of the Receiver, Finsilver resumed as property manager of the Building.[1] Under its management of the Building prior to appointment of the Receiver, the Debtor allowed numerous acute problems to persist without repair. The Debtor's neglect of the Building resulted in problems with the air conditioning towers, life safety system, elevators, plumbing leaks and standing water in the basement, failure to replace broken windows, and dangerous problems with the electricity infrastructure. *Bass Affidavit*, ¶¶ 5, 7. The Debtor's failure to pay vendors resulted in unsafe and unsanitary conditions including lack of heat to the Building, and cessation of trash pickup which resulted in the janitorial crew storing trash on vacant floors instead of properly disposing of it. *Bass Affidavit*, ¶¶ 5, 7.

In 2009, the Wayne County Circuit Court appointed the Receiver. Although many problems remain - the electrical system repair is still incomplete, many infrastructure issues

---

[1] On September 25, 2009, the Wayne County Circuit Court entered an Order appointing Finsilver as receiver of the building. By entry of an Order dated December 16, 2009, O'Keefe & Associates Consulting, LLC assumed the responsibilities of the receivership and Finsilver remained on as property manager.

remain to be addressed, and Honigman has yet to receive any redress for the damage it has suffered as a result of the Debtor's malfeasance with regard to the Building - since the appointment of the Receiver many overdue repairs have been completed and the general condition of the Building has improved. *Declaration of Robert Kubic*, ¶¶ 8-11, (copy attached as Exhibit C.

In November 2010, FNB Detroit 2010 LLC ("FNB Detroit") purportedly purchased the underlying note and mortgage from the Bank and asserts a first mortgage claim against the Building in the amount of $25,723,000. FNB Detroit is an affiliate of the Debtor and is "working closely" with the Debtor. See, *In re FN Building , LLC,* Case No. 11-10266, United States Bankruptcy Court for the Southern District of New York: Docket #5, Application For Authority To Use Cash Collateral, ¶6; Docket #33, Objection to Receiver's Motion, ¶¶ 6, 15, 29; Docket #60, Objection To Motion To Dismiss Or Transfer Venue, ¶¶ 6, 9)

On January 26, 2011, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Court"). On January 28, 2011, the Debtor filed an Application for Authority to Use Cash Collateral and on February 24, 2001, the SDNY Court entered the Interim Agreed Order Authorizing the Use of Cash Collateral (copy attached to Motion for Final Order Authorizing Use of Cash Collateral, Doc. #28).

On March 3, 2011, the SDNY Court held a hearing on, among other matters, the Debtor's second Motion to Approve Use of Cash Collateral and on the change of venue issues presented in Motion to Dismiss Case and Memorandum of Honigman Miller Schwartz and Cohn LLP for the Entry of an Order (A) Dismissing the Chapter 11 Case of FN Building, LLC. Transcript of March 3, 2011 Hearing, attached as Exhibit D. At the hearing, the Debtor stated that it "has

agreed to continue the receiver-in-possession through the outcome of the case" and that the "receiver being in place stabilizes whatever's going on in Michigan in terms of operational issues." Transcript pp. 9, 21. See also, Transcript p. 23 ("The tenants, they have issues but they have their receiver; that's stabile [sic]"). Thus, the Debtor acknowledges that the Receiver should remain in place throughout this case in order to provide stability to the ongoing operations of the Building. Further, FNB Detroit also acknowledged that the Receiver "will deal with [the] day-to-day operations and maintain what is there." Transcript, p. 28.

Perhaps most importantly, the SDNY Court acknowledged that "[e]veryone agrees [that the Receiver is] a good idea." Transcript, p. 21. The SDNY Court further acknowledged:

> Well, it doesn't sound like there's any dispute about leaving the receiver in place until -- what I heard, the language before, was until the case concludes. And I don't want to prejudice anyone's rights to change their minds since you're going to Michigan and maybe that changes something but, certainly, it doesn't sound like there's any desire to have the receiver leave and that provides stability as the case is transferred and -- which I think is beneficial for the estate and the creditors.

Transcript, p. 38

On March 9, 20111, the SDNY Court entered a Second Interim Order Authorizing the Use of Cash Collateral (the "Second Interim Cash Collateral Order") (copy attached to Motion for Final Order Authorizing Use of Cash Collateral, Doc. #28). The Second Interim Cash Collateral Order expires on March 31, 2011.

## Argument

As made clear in the Transcript of the March 3, 2011 hearing before the SDNY Court, all of the affected parties including the Debtor, FNB Detroit, and the tenants who have appeared, agree that the Receiver's continued use of the collected rents to cover the expenses for effective

6

operations of the Building is the proper course of action. The Receiver's continued operations of the Building will ensure stability during the period required for the Court to schedule the hearings on approval of the Debtor's Disclosure Statement and Plan confirmation.

To the extent that security interests in cash (the "<u>Operating Cash</u>") have been asserted and are proven to be valid, such interests will be adequately protected by a replacement liens in post-petition accounts receivable, rents and proceeds thereof, to the same extent, validity and priority.

Absent continued access to the Operating Cash, the continued operation of the Building is not possible and immediate and irreparable harm to the Building's tenants, the Debtor's creditors and the Debtor's bankruptcy estate will occur. The ability to use the Operating Cash to fund the continued operations of the Building is vital to the preservation of value for the Debtor's estate.

Although parties may claim interests in the Operating Cash, pursuant to Sections 363(c)(2) and 363(e) of the Bankruptcy Code, the Debtor is permitted to use the Operating Cash if the Debtor provides these parties with adequate protection. "Adequate protection" is not defined in the Bankruptcy Code, adequate protection is aptly described as "a balancing of the debtor's and a creditor's respective harm." *In re Carson*, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted). The legislative history of Section 361 of the Bankruptcy Code reflects Congress' intent to give the Court flexibility to fashion adequate protection in light of the facts and equitable considerations in each case. See, e.g., *In re O'Conner*, 808 F.2d 1393 (10th Cir. 1987); *In re 5-Leaf Clover Corp.*, 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980); *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985) (noting that adequate protection is "a flexible concept which requires a Court to make decisions on a case-by-case basis."). For

example, in determining what constitutes "adequate protection," courts must consider not only the interests of the secured creditor whose cash collateral is affected, but the interests of all other creditors in light of the debtor's efforts to enhance the prospects of reorganization. *O'Connor*, 808 F.2d at 1397-98. As stated in *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982), "the application of rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the … plaintiff-mortgagee's claim. [The use of such funds] without any diversion … to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected." Not only will the secured creditors' interests in the Building itself be adequately protected by the use of the Operating Cash, but additionally, security interests in the generated rents will also be adequately protected. *In re 499 W. Warrant Street Associates Limited Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) ("[T]he creditor's interest in the rental income generated by the property is adequately protected when a portion of the rents is reinvested in the property for operational expenses and maintenance. Funds so utilized contribute to the generation of additional rents upon which that creditor's security interest subsequently attaches"). See also, *In re Constable Plaza Associates, L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991); *In re Cardinal Industries, Inc.*, 188 B.R. 971 (Bankr. S.D. Ohio 1990).

Unless the Receiver is allowed to continue to use the Operating Cash to fund the operations of the Building, the Building will surely suffer continued decay and deterioration, jeopardizing the continued payment of rent by the tenants, and ultimately, the value the Debtor may realize from its potential sale of the Building, not to mention the immediate day-to-day harm that will be suffered by the tenants and the general public who use and occupy the Building.

8

11-46947-mbm    Doc 37    Filed 03/29/11    Entered 03/29/11 08:53:42    Page 8 of 9

For these reasons, Honigman supports the Receiver's Motion for Final Order Authorizing Use of Cash Collateral and requests that the Court grant the relief requested therein.

**<u>Conclusion</u>**

For the above-stated reasons, Honigman supports the Receiver's Motion for Final Order Authorizing Use of Cash Collateral and requests that the Court grant such Motion.

Dated: March 29, 2011

DICKINSON WRIGHT PLLC

By: /s/ Dawn R. Copley
James A. Plemmons (P42892)
Dawn R. Copley (P53343)
Attorneys for Honigman Miller Schwartz and Cohn LLP
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
jplemmons@dickinsonwright.com
dcopley@dickinsonwright.com

DETROIT 19267-7 1197811v1