UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

FN Building L.L.C.

Case No. 11-46947-mbm
Hon. Marci B. McIvor
Chapter 11

Debtor.
_____/

## DEBTOR'S REPLY TO MOTION FOR ORDER UNDER 11 USC §105 SEEKING CLARIFICATION OF FINAL CASH COLLATERAL ORDER AND/OR AUTHORITY TO USE CASH COLLATERAL FOR EMERGENCY FACADE INSPECTION AND REPAIRS.

Now comes Debtor, by and through its attorney, Martin L. Fried, and hereby responds to the aforesaid motion as follows:

1. Debtor opposes the use of the Debtor's cash collateral for facade restoration for the reasons hereinafter set forth.

2. Debtor believes that this newly found emergency appears to be nothing less than collusion between the Receiver and 660 Woodward Associates, LLC, (the "Purchaser") the contemplated purchaser of the Debtor's building, to shift the $350,000 repairs for the facade from the Purchaser to the Debtor.

3. Paragraph 10 of the Purchase Agreement for the sale of Debtor's building provides that the sale is "AS IS, WHERE IS, AND WITH ALL FAULTS".

4. Paragraph 13 of the Purchase Agreement gives the Purchaser a 30 day "Inspection Period" to determine whether or not it wishes proceed with the purchase or terminate the Purchase Agreement.

5.      On May 12, 2011, the very same day that the Inspection Period expired and the Purchase Agreement became a binding commitment for the Purchaser to purchase the Debtor's building, the Receiver notified Debtor that the Receiver wanted to discuss the Restoration Project with Debtor.  This notification was accompanied by an email from the Purchaser's own construction manager to "please proceed with scheduling the façade restoration work and the garage restoration work immediately and pay for the work up front. Please make sure that you discuss with John O which contractor will do this work and the scope of work to be completed."

6.      It appears from the foregoing email that the Purchaser's construction manager is not only directing that the restoration project begin "immediately", but also is designating which contractor does the work and wants the entire project paid for "up front". This project should be originated by and supervised by the Receiver, not the Purchaser's construction manager. It is this email that leads Debtor to the suspicion that the Purchaser is in collusion with the Receiver in an attempt to circumvent the "AS IS, WHERE IS, WITH ALL FAULTS" language in the Purchase Agreement and shift the $350,000 cost of repairing the facade to the Debtor.

7.      Debtor suspects further that the supposed urgency of this matter as portrayed by the Receiver is not on account of a concern for public safety, but rather an effort to sign the contracts and pay for it with Debtor's money before the closing on the sale of the building after which any cost of restoration will be the obligation of the Purchaser.  The RAM inspection report on which the Receiver relies to justify the supposed safety concern is dated April 30, 2010 - over a year ago! It is submitted that if there were a real safety concern, the work would have begun a year ago immediately after receiving this RAM

2

report rather than a year later and immediately after the Purchaser became bound to purchase the building.

8.      The hearing set by the Court to approve the sale to the Purchaser is June 28, 2011. The Debtor has requested that the Receiver delay all activity on the restoration project until the closing date after which any restoration will be the cost of the Purchaser. Instead, the Receiver brought this Motion to be heard on an expedited basis in an apparent effort to obtain Court approval, sign the contract and pay the Debtor's money BEFORE the closing.

9.      It is Debtor's position that the Receiver is bound by the 12/16/09 Stipulated Amended and Restated Order Appointing Receiver entered by the Wayne County Circuit Court ("OAR") (Exhibit A) as well as the orders issued by this Bankruptcy Court.    The Receiver has not complied with the provisions of the of the OAR which has certain requirements for the Receiver to enter into a contract of more than $10,000 and for that reason, this Court should not approve the $350,000 expenditure requested by the Receiver. In particular:

a.      Paragraph 4.1(c) of the Stipulated Amended and Restated Order Appointing Receiver requires "Approval" for contracts in excess of $10,000.

b.      "Approval" is defined Paragraph 9 as "either Plaintiff's approval or court approval". The Court is the Wayne County Circuit Court, not the Bankruptcy Court. Plaintiff is FNB Detroit 2010, LLC, as successor in interest to National City Bank.

c.      The Receiver does not have "Approval" of either the Wayne County Circuit Court or the Plaintiff.

d.      Paragraph 4.1(a)(ii) authorizes the Receiver to engage contractors without "Approval" "if the expenditure is included in the Approved Budget".

3

e.      Paragraph 7.5 specifies that for a Budget to be an "Approved Budget", it is "subject to Plaintiff's approval" which means that the Plaintiff must affirmatively approve the budget.  Bankruptcy Court approval is not the same thing as Plaintiff's approval.

## CONCLUSION

For all the foregoing reasons, Debtor prays that this Court deny the request of the Receiver.

Goldstein Bershad & Fried, PC

Attorney for Debtor

/s/ Martin L. Fried
Martin L. Fried P-13712
4000 Town Center, Suite 1200
Southfield, MI 48075
Phone:       (248) 355-5300
Fax:          (248) 355-4644
email  marty@bk-lawyer.net

4

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

NATIONAL CITY BANK,

NATIONAL CITY BANK v FN BUILDING
Hon. John A Murphy                    08/25/2009

09-021031-CK

Plaintiff,

vs.

FN BUILDING, LLC, et al

    Defendants.

_____

### STIPULATED AMENDED AND RESTATED ORDER APPOINTING RECEIVER

At a session of Court held in the County of Wayne,
City of Detroit, State of Michigan on
DEC 16 2009

PRESENT: HON. JOHN A. MURPHY
CIRCUIT COURT JUDGE

    Plaintiff having filed a Complaint seeking appointment of a receiver, Plaintiff having filed a motion to appoint receiver, the Court having reviewed the pleadings filed by the parties, the Court having entered its Order Appointing Receiver on September 25, 2009 (the "Original Receiver Order") appointing Finsilver Friedman Management Corporation ("Finsilver") as Receiver, Plaintiff having filed its motion for entry of this Stipulated Amended and Restated Order Appointing Receiver (the or this "Amended and Restated Order") for the purpose of appointing a successor receiver, all parties having stipulated to the entry of this Amended and Restated Order, and the Court being otherwise fully informed in the premises, the Court hereby makes the following findings of fact:

1

EXHIBIT A

A. Defendant, FN Building, LLC, a Delaware limited liability company ("Defendant") granted Plaintiff a certain Mortgage and a certain Assignment of Leases and Rents, each as amended (collectively, the "Mortgage") as more fully set forth in Plaintiff's Complaint. Defendant and Defendant Northern Group, Inc. are collectively referred to herein as "Defendants".

B. The Mortgage granted to Plaintiff a mortgage lien against certain real property (the "Real Estate") located in the City of Detroit, Wayne County, Michigan, being more particularly described in **Exhibit A**, attached. Plaintiff has further been granted a security interest in all fixtures to the Real Estate as more particularly described in the Mortgage (the "Fixtures" and, collectively with the Real Estate, the "Collateral"). Defendant operates an office building with an adjoining parking ramp on the Real Estate (the "Project").

C. Plaintiff's proposed receivership is a limited receivership over the Collateral and not over the Defendant and is for the purpose of maintaining the uninterrupted operation of the Project.

Pursuant to MCL 600.2926 and the consent of the parties, IT IS HEREBY ORDERED:

## 1. Appointment of Receiver and the Receivership Property.

1.1 Effective and commencing on the date of entry of this Amended and Restated Order, O'Keefe & Associates Consulting, L.L.C., whose address is 2 Lone Pine Road, Bloomfield Hills, Michigan 48304 ("O'Keefe"), is appointed to succeed Finsilver as the receiver ("Receiver") of the Receivership Property (as defined in paragraph 6.1 below). The Receiver's duty to act as receiver is subject to the Receiver's written acceptance and approval of the terms of this Amended and Restated Order. This Amended and Restated Order is effective as of November _____, 2009 (the "Effective Date").

2

1.2     As of the Effective Date, the Receiver is authorized to direct and take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, to prevent waste, and to preserve, manage, secure and safeguard the Receivership Property. Defendants shall have neither possession nor control of, nor any right to, Income (as defined in paragraph 6.1 below) derived from the Receivership Property after the Effective Date.

1.3     The Receiver shall deposit all Income and all other monies and funds collected and received in connection with the Receivership Property in an account at National City Bank in the Receiver's own name ("Receiver Account").

1.4     The Defendants, any property managers, and all of their respective employees, if any, are ordered to cooperate with Plaintiff in the transition of the management of the Receivership Property to the Receiver and on the Effective Date turn over to the Receiver (to the extent not previously turned over to Finsilver pursuant to the terms of the Original Receiver Order) all of the following pertaining to the Receivership Property (but only to the extent that such items are in their possession, custody, or control):

    (a)    All keys.

    (b)    All tenant leases including all communication/correspondence files.

    (c)    Documents pertaining to all pending new leases/renewals.

    (d)    A current rent-roll.

    (e)    Tenant contact names and telephone numbers.

    (f)    The occupant ledgers.

    (g)    All security deposits, security deposit accounts, and an accounting for all security deposits.

    (h)    All leases and other contracts for equipment located and used in or at the Project.

    (i)    A current aged account receivable/delinquency report.

    (j)    An aged listing of all trade payables and other payables.

3

(k)     A list of historical common area maintenance charges and operating expenses for the Project.

(l)     A list of utilities and utility accounts.

(m)     Year-end 2007 operating statements, year-end 2008 operating statements, and year-to-date 2009 monthly operating statements.

(n)     All existing service contracts.

(o)     All pending bids for contractor work.

(p)     All insurance policies on the Project and their terms.

(q)     All tenant and vendor insurance certificates and loss runs.

(r)     Information regarding all insurance claims submitted in the past three (3) years.

(s)     Surveys, site plans, specifications, floor plans, drawings, measurements, etc.

(t)     Documents identifying and summarizing all pending litigation relating to or affecting the Receivership Property (excluding this action).

1.5     For the purpose of transition of management of the Receivership Property by the Receiver (and without waiving any privilege), Defendants shall provide the Receiver with access to or copies of all documents, books, records and computer files, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, e-mail account maintained at the on-site management office(s) (and all off-site financial records) including the office located at the Project including, but not limited to, all records concerning the Income, and the operation and management of the Project and such other records pertaining to the management of the Receivership Property as may be reasonably requested by the Receiver (excluding any documents, records or information previously turned over to Finsilver pursuant to the terms of the Original Receiver Order)

1.6     Finsilver is hereby ordered to promptly provide the Receiver with a list of all documents, records, information and/or keys identified in Paragraphs 1.4 and 1.5 of this Amended and Restated Order, which Finsilver received from Defendants. Finsilver is

4

further ordered to cooperate in the transition of the receivership from Finsilver to O'Keefe.

1.7     Until further Order of this Court, the parties, their agents and employees, and all other persons with notice of the Original Receiver Order and/or this Amended and Restated Order (other than Receiver) remain or are hereby restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing or causing harm to any of the Receivership Property, doing any act to interfere with the Receiver from taking control, possession, or management of the Receivership Property, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Receivership Property. Notwithstanding the above, this Amended and Restated Order does not prevent any party, entity, or person from acting or enforcing any rights under the United States Bankruptcy Code. This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

1.8     The Receiver shall obtain insurance, as Receiver deems appropriate, including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, with loss payable and additional insured endorsements in favor of the Receiver and in favor of Plaintiff as directed by Plaintiff, and modifying the policies if deemed appropriate by the Receiver, but subject to Approval for any modifications.

5

1.9     All duties and obligations of Finsilver as Receiver pursuant to the Original Receiver Order shall terminate and Finsilver shall be discharged as Receiver as of the Effective Date. Following entry of this Amended and Restated Order, Finsilver shall promptly file a final report for the period ending on the Effective Date.

**2.     Receiver's Duties and Authority.**

2.1     The Receiver shall be vested with and shall discharge the following authority, powers and duties:

(a)     To maintain, secure, manage, operate, repair and preserve the Receivership Property.

(b)     To change any and all locks to the Receivership Property (excluding tenant space) and, if appropriate, limit access to some or all of the Receivership Property (excluding tenant space).

(c)     To assume control over the Receivership Property and to collect and receive all Income.

(d)     To prepare and maintain complete books, records, and financial reports of the Receivership Property, including, but not limited to, operating statements, income statements, balance statements, and all other statements prepared for the Receivership Property in a form acceptable to Plaintiff.

(e)     To allow Plaintiff, its counsel and appraisers and other independent third party consultants engaged by Plaintiff access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers, and other independent third-party consultants to evaluate the Project.

(f)     To hire on-site employees and subsequently discharge any such employees (none of whom are, or shall be deemed to be, employees of Plaintiff). None of the on-site employees currently employed by Defendant or any of its affiliates shall be employees of the Receiver unless and until hired by the Receiver.

(g)     To establish pay rates for any on-site employees.

(h)     To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in Defendant's name.

(i)     To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Receivership Property from the Income. To prepare and file any tax returns arising in connection with the Receivership Property and the operation of the Receivership Property as

6

may be required by law. The Receiver shall not be responsible for the preparation and filing of any tax returns for Defendant or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide Defendant with information in the Receiver's possession that may be necessary for Defendant or its affiliates to prepare and file their returns. Defendant shall provide to the Receiver any information needed to file any tax returns for the Receivership Property.

(j) To operate the Receivership Property under any existing name or trade name.

(k) To provide Defendant with all information reasonable and necessary for the preparation by Defendant of its tax returns.

## 3. Receiver's Duties and Authority –Office.

3.1 While Defendant or its assigns retains title to the Real Estate and other

Receivership Property, the Receiver is authorized and directed:

(a) To expeditiously and diligently lease any vacant space in the Project upon market terms and conditions, subject to Approval (as defined in paragraph 9.1 below).

(b) To collect any unpaid or delinquent rents and common area maintenance ("CAM") charges regardless of whether the obligation(s) accrued before or after the Receiver's appointment.

(c) To execute new lease agreements or extensions, and other amendments or modifications of existing leases subject to Approval.

(d) To enforce any valid covenant of any existing lease.

(e) To prosecute tenant eviction proceedings in the ordinary course of management of the Receivership Property and to retain an attorney for such purpose, subject to Approval.

3.2 Any security or other deposits that tenants have paid or may pay to the Receiver

after the Effective Date shall be refundable by the Receiver in accordance with the leases or

agreements.

## 4. Receiver's Authority Subject to Approval.

4.1 In carrying out the duties contained in this Amended and Restated Order, the

Receiver is authorized, but not required, and only upon Approval:

7

(a) To engage contractors and skilled trades on a competitive-bid basis to complete tenant improvements to the Receivership Property and/or to maintain the Receivership Property, and to execute such contracts for such purposes as the Receiver deems appropriate, but no Approval is required if:

      (i) The aggregate amount of the contract is less than $10,000;

      (ii) The expenditure is included in the Approved Budget; or

      (iii) The expenditure is for a life-threatening or other health or safety emergency.

(b) To enforce, amend, or terminate any existing contracts affecting the Receivership Property.

(c) To execute, all service, maintenance, or other contracts relating to the operations of the Receivership Property, but subject to Approval for contracts in excess of $10,000. All such contracts are to be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership unless impractical to do so.

(d) To employ attorneys, accountants, agents, and other professionals as the Receiver may from time to time deem appropriate and on reasonable terms and conditions.

(e) To the extent the Receiver does not have funds in the Receiver Account or otherwise from the Receivership Property, Plaintiff may make advances to the Receiver to permit the Receiver to carry out its duties under this Amended and Restated Order, which advances shall be secured by a first and senior lien against the Receivership Property in accordance with section 5.6(a) of this Amended and Restated Order. To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property for any new or currently pending tax appeal subject to payment of reasonable attorney fees due in connection therewith. Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or Defendant, and whether pertaining to any tax period before or after the entry of this Amended and Restated Order, shall be deemed "Income" to be applied as provided in this Amended and Restated Order, except that "Income" shall not include payment of reasonable attorney fees due in connection therewith.

(f) To prosecute any and all claims, including but not limited to claims related to going out of business sales, administrative expenses, lease assumptions, lease assignments and/or lease rejections, against any of Defendant's tenants in any court action, including a bankruptcy court action, on behalf of or in the name of the Defendant until conclusion of the court action and to file any proof of claim, amended proof of claim, and/or any such other pleading as may be necessary to pursue any administrative expense, lease assumption, lease assignment and/or lease rejection claim (collectively the "Litigation Claim"). Any amounts paid in partial or full satisfaction of

8

> any Litigation Claim, whether such claim arose before or after entry of the Original Receiver Order , shall be deemed "Income" to be applied as provided in this Amended and Restated Order.

4.2     The Receiver shall engage Finsilver as the property manager for the Project on reasonable terms and conditions subject to Plaintiff's Approval (defined below). The Receiver shall delegate to Finsilver, as property manager, those duties set forth in Paragraphs 2 and 3 of this Amended and Restated Order that are within the scope of the property management duties of Finsilver under its engagement with the Receiver. Finsilver's engagement as property manager shall automatically terminate upon the termination of this receivership, unless terminated earlier pursuant to paragraph 10.2 of this Amended and Restated Order.

5.     **Extent of Receiver's Authority.**

5.1     Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property.

5.2     Without limiting or expanding the foregoing, the Receiver is authorized to exercise all rights reserved or granted to Defendant under the Mortgage and all powers and authority generally available under the laws of the State of Michigan that may be incidental to the powers described in this Amended and Restated Order or reasonably necessary to accomplish the purpose of this Receivership. The Receiver shall have such additional powers that are provided by law and that the Court may from time to time direct or confer.

5.3     The Receiver shall not take any action that impedes or interferes with the foreclosure or foreclosure sale process in carrying out the duties contained in this Amended and Restated Order. The Receiver is barred from impeding or frustrating the foreclosure or foreclosure sale process.

9

5.4    The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

5.5    The authority granted to the Receiver is self-executing, unless the action requires Approval. The Receiver is authorized to act on behalf of, and in Defendant's name (or the Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the General Provisions as set forth in paragraph 11 of this Amended and Restated Order).

5.6    Any and all advances made by Plaintiff shall be construed as follows:

(a)    All advances to the Receiver by the Plaintiff for the benefit of the Receivership Property, including any advances for working capital or tenant improvements, and any other costs and expenses incurred by the Receiver under this Amended and Restated Order, shall be deemed protective advances under the Mortgage ("Protective Advances"). Any Protective Advances shall be fully secured by Plaintiff's mortgage lien and security interest against the Real Estate and other Receivership Property.

Without derogating from the foregoing, any and all funds advanced by Plaintiff to the Receiver pursuant to this Amended and Restated Order shall:

(i)    Be deemed made pursuant to contract;

(ii)    Be added to the amount of the indebtedness owed by the Defendant to Plaintiff or any Judgment for the indebtedness;

(iii)    Be deemed secured by the liens and security interests in favor of Plaintiff under the Loan Documents on the Receivership Property to the same extent and with same priority as the other indebtedness secured by all existing liens and security interest under the Loan Documents in favor of Plaintiff; and

(iv)    Accrue interest at the interest rate as provided under the Loan Documents or in any Judgment for the indebtedness in favor of Plaintiff.

(b)    The Receiver is authorized to issue receivership certificate(s) to secure any Protective Advances by the Plaintiff, but subject to Approval.

(c)    Nothing contained in this Amended and Restated Order shall require Plaintiff to advance funds to the Receiver for the payment of operating

10

costs or any other expense related to the Receivership Property. All Protective Advances shall be discretionary with the Plaintiff.

6. **Receivership Property and Income.**

 6.1 "Receivership Property" means and includes:

  (a) As of the Effective Date, the Collateral.

  (b) All of the following acquired by the Receiver after the Effective Date:

   (i) All tangible and intangible property used or useable in connection with the operations of the Receivership Property including, without limitation, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related to the Receivership Property, causes of action, drawings, plans, specifications, and escrow agreements.

   (ii) All Income.

   (iii) Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or Defendant, and whether pertaining to any tax period before or after the entry of this Amended and Restated Order, subject to payment of reasonable attorney fees due in connection with such tax refunds or reimbursements, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property.

   (iv) All fixtures, trade fixtures, and tenant improvements of every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Real Estate and any buildings, structures or improvements located on the Real Estate (to the full extent of Defendant's interest in such).

   (v) All permits, licenses, other contracts, and other intangible property pertaining to the Real Estate and the operations of the Real Estate.

   (vi) All books, records, accounts, and documents that in any way relate to the Project, Collateral, or Income.

 6.2 The term "Income" means, collectively, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral; current and past-due earnings, revenues, rent, CAM charges, issues and profits, accounts, and accounts receivable

11

(all whether unpaid, accrued, due, or to become due); all claims to rent, CAM charges, issues, profits, income, cash collateral, payments made pursuant to any administrative expense, lease termination, lease assumption, lease assignment and/or lease rejection claims in any bankruptcy action, and all other gross income derived with respect to the Project or business operations at the Project, regardless of whether earned before or after entry of this Amended and Restated Order. Income, after establishment of reserves as set forth in the Approved Budget (as defined in paragraph 7.5 below), shall be applied monthly as follows:

      (a)      to the Receiver's approved fees and expenses;

      (b)      to the repayment of any receivership certificate securing any Protective Advances made by Plaintiff to Receiver;

      (c)      to the current post-receivership operating expenses, including any on-site employee payroll expenses, any real estate taxes, and any other taxes arising from the operations of the Receivership Property and use in normal business operations incurred during the Receivership, to the extent in the Approved Budget. The Receiver shall not make disbursements other than permitted under the Approved Budget except for:

            (i)      life-threatening or other health or safety issues,

            (ii)      variations on individual line-item(s) not exceeding 10% so long as expenses in the aggregate are within 5% of the Approved Budget on a monthly basis, or

            (iii)     upon Plaintiff's Approval;

      (d)      to the loan balance or judgment due Plaintiff until paid in full; and

      (e)      any surplus to be held pending further Amended and Restated Order of the Court.

## 7.   Receiver Compensation, Reports, Accounting, and Bond.

      (a)      The Receiver shall be compensated for its services on an hourly basis. The Receiver's hourly rates range from $90 for a paraprofessional to $425 for a director. The Receiver's hourly rates are subject to change on an annual basis. The Receiver shall issue invoices for its fees, with copies to the parties to this action, through their respective counsel, on a monthly basis. The Receiver may receive payment on a monthly basis, without further order of this Court, provided no objections are filed with the Receiver within seven (7) days after such invoices are sent by electronic mail to all parties' counsel of record. In the event an objection is timely filed, the objecting party shall file a motion with the Court within seven

12

(7) days after the date of service of the objection to determine the propriety of the fees sought, or its objections will be waived.

7.2     The Receiver's compensation and any reimbursable expenditures made by Receiver on behalf of the Receivership Property shall, to the extent that the Income is insufficient, be paid from Protective Advances.

7.3     Nothing in this Amended and Restated Order shall require the Receiver to advance any of its own funds.

7.4     By the 25th day of each calendar month, the Receiver shall prepare a financial report (including, without limitation, an income and expense statement, a balance sheet and a cash flow analysis) pertaining to the operations of the Receivership Property during the immediately preceding month. The Receiver shall further prepare a proposed operating budget and capital budget (the "Budget") each December 1 for the succeeding year (collectively "Receiver's Reports").

7.5     The Budget will be reviewed by the parties and be subject to Plaintiff's Approval. The Budget, as approved, shall be the "Approved Budget."

7.6     The Receiver shall submit the Receiver's Reports to the Court under seal.

7.7     The Receiver shall furnish to all counsel of record any additional information regarding the Receivership Property as required by law and as may be reasonably requested by them, but the Receiver is authorized to request instructions from this Court should any party request information or documents that would be unduly burdensome or expensive to produce, or to annoy or harass, or for any other improper purpose.

7.8     The Receiver shall furnish the Receiver's Reports to the following:

        Robert D. Mollhagen
        VARNUM
        39500 High Pointe Blvd., Suite 350
        Novi, Michigan 48375

13

Kimberly Kashon
National City Bank
One South Broad St., 14th Floor
Locator 01-5997
Philadelphia, PA 19107

All other counsel of record.

7.9     The Receiver shall post a surety bond in an amount of not less than $0.00. The cost of the bond shall be an expense of the Receivership, for which the Receiver shall be reimbursed in accordance with the terms of this Amended and Restated Order.

## 8.     Confidentiality.

8.1     "Confidential Information" means the Receiver's Reports and any other nonpublic information.

14

8.2     The parties to this action, their counsel, their financial professionals and all those in active concert or participation with them, who receive actual notice of this Amended and Restated Order, or otherwise, shall keep all Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court, except that Plaintiff and its attorneys and agents may provide potential purchasers, consultants, and any other appropriate persons with information useful for the marketing, leasing, selling, or management of the Receivership Property. In addition, the parties in the Wayne County Circuit Court case captioned Honigman Miller Schwartz & Cohn LLP v FN Building, LLC, Case No. 09-021695-CK, Judge Kathleen MacDonald, may use the Confidential Information in connection with the prosecution and defense of that action.

9.      **Approval.**

9.1     "Plaintiff's Approval" means written consent either directly by Plaintiff or by Plaintiff's counsel. "Court Approval" means approval by a specific order of the Court. "Approval" when appearing without a modifier means either Plaintiff's Approval or Court Approval.

10.     **Term and Final Accounting.**

10.1    This Receivership shall continue until further order of the Court.

10.2    The Receiver and/or Finsilver can be removed either (1) automatically thirty (30) days after the filing of a written demand for removal signed by Plaintiff's counsel and filed with the Court; or (2) in the Court's equitable discretion upon a motion for cause. If the Receiver and/or Finsilver is/are removed, a successor receiver and/or property manager can be appointed by a stipulated order on behalf of Plaintiff and Defendant. If Plaintiff and Defendant cannot

15

agree on a successor receiver and/or property manager, the Court will name a successor receiver and/or property manager by further order of this Court after a motion is filed by Plaintiff or Defendant requesting the appointment of a successor receiver and/or property manager.

10.3    Immediately upon termination of the Receivership or the property manager, the Receiver or the property manager shall turn over to Plaintiff or its designee (including any successor property manager), all of the Receivership Property unless otherwise ordered by this Court.

10.4    Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

10.5    The Receiver shall submit a final accounting (with copies to the recipients of Receivers Reports as identified above) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal.

10.6    After the Court approves the Receiver's final accounting, the Receiver shall be discharged and the Receiver's bond shall be cancelled.

11.    **General Provisions.**

11.1    No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action; provided, however, that no prior order of this Court is required to file a motion in this action to enforce the provisions of this Amended and Restated Order or any other order of this Court in this action.

11.2    The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendant's creditors because of its duties as Receiver. Nothing in this Amended and Restated

16

Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Michigan law.

11.3 The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Amended and Restated Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to materially comply with this Court's orders.

11.4 Defendants, all property managers, and all those in active participation or concert with them who receive notice of this Amended and Restated Order, and all those having claims against the Receivership Property who receive notice of this Amended and Restated Order, are enjoined from, and shall not:

(a) **Commit Waste.** Commit or permit any waste on all or any part of the Receivership Property, or suffer or commit or permit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Property.

(b) **Collect Income.** Demand, collect, receive, discount, or in any other way divert or use any of the Income.

(c) **Terminate any Utility Service.** Terminate any electric, gas, water, sewer, telephone, or other utility service supplying the Receivership Property (except for non-payment of services), require any utility deposit, or otherwise interfere with the continued operations of the Receivership Property.

(d) **Interfere with the Receiver.** Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Amended and Restated Order or the Receiver's possession of and operation or management of the Receivership Property.

(e) **Transfer or Encumber the Receivership Property.** Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income, without prior court Amended and Restated Order.

(f) **Impair the Preservation of the Receivership Property.** Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property, including the Income, or the

17

preservation of Plaintiff's interest in the Receivership Property and the Income.

11.5    The Receiver shall faithfully perform and discharge the Receiver's duties and obey the orders of this Court.

11.6    The Receiver is subject to the personal jurisdiction of the Court.

11.7    The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Amended and Restated Order. Upon acceptance, the Receiver shall be bound by each and every term contained in this Amended and Restated Order and each and every obligation of the Receiver imposed by this Amended and Restated Order.

11.8    No Register of Deeds shall require the imposition of any transfer tax on any written instrument conveying or transferring property or an interest in property to the Receiver, as provided in MCL 207.506 and MCL 207.527, as amended.

## 12.    Amendment of Amended and Restated Order.

12.1    This Amended and Restated Order may be amended for cause after a motion or hearing. This Amended and Restated Order may also be amended by order agreed to by Plaintiff, Defendant, and the Receiver, although notice of submission to the Court of any such amendment for entry must be provided to the parties to this action.

## 13.    No Prejudice to Foreclosure/Final Amended and Restated Order/Other

## Lawsuits/Tenant Leases.

13.1    This Amended and Restated Order shall not prejudice Plaintiff's foreclosure of the Mortgage, either judicially or by advertisement, or an action by Plaintiff under any security agreement or the Uniform Commercial Code with respect to the Collateral, or any of Plaintiff's other claims as set forth in any amendments to the Complaint.

18

13.2    Pursuant to MCR 2.604(B), the Court expressly determines there is no just reason for delay. Accordingly, this is a final order on Plaintiff's claim for appointment of a receiver.

13.3    It is agreed and understood among all the parties, and their counsel, that nothing in the Original Receiver Order or this Amended and Restated Order shall be construed to alter, impact, affect or impair, in any way, the rights of the parties, or any of the orders and rulings that have been, or will be, entered by the Court in the proceedings in *Michielutti Bros., Inc., v FN Building, LLC, et al*, Case No. 08-120229-CH (Wayne County Circuit Court) and *Honigman Miller Schwartz and Cohn LLP v FN Building LLC*, Case No. 09-021695-CK (Wayne County Circuit Court), provided, however, that this paragraph does not affect in any way the releases signed by the Plaintiff and certain Defendants in conjunction with and in consideration of the Original Receiver Order (which releases have been placed on the record in open Court on 9-25-09). In addition, all parties and their counsel agree that the proximity in time of the appointment of O'Keefe to succeed Finsilver as Receiver under this Amended and Restated Order may not be used by the Receiver or any other party in either of the foregoing cases to support a request to alter, impact, affect or impair in any way any hearing or trial date, discovery deadline or other proceeding scheduled or ordered or to be ordered and held in either of the foregoing cases.

13.4    With respect to all tenant leases in effect for at least ninety (90) days prior to the entry of the Original Receiver Order, nothing in the Original Receiver Order or this Amended and Restated Order shall be construed to alter, affect or impair any rights or obligations existing under such tenant leases.

14.    **Workout Activity.**

14.1    The Court finds that Plaintiff, in seeking to obtain a receiver, is engaged in a work-out activity, as that term is defined by MCL 324.20101, and its actions in seeking

19

appointment of a receiver are intended to protect the value and marketability of the Receivership Property. Further, National City's actions in seeking the appointment of a receiver do not amount to participation in management as that term is defined in CERCLA, 42 USC § 9601(a)(20).

JOHN A. MURPHY
_____
Circuit Court Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
BY
DEPUTY CLERK

Agreed As To Form And Substance:

VARNUM

*Bradley Defoe* /s/
_____
Bradley S. Defoe P70233
Attorneys for National City Bank

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.

*Sean P. McNally* with permission
_____
Sean P. McNally P66292
Attorneys for Michielutti Bros., Inc.
and M.J. White & Son, Inc.

LAWRENCE SHOFFNER & ASSOCIATES

*Lawrence R. Shoffner* with permission
_____
Lawrence R. Shoffner P32727
Attorneys for The United Way

BARRIS, SOTT, DENN & DRIKER, PLLC

*Todd R. Mendel* with permission
_____
Todd R. Mendel P55447
Attorneys for Honigman Miller Schwartz
& Cohn, LLP

CHIOINI, SARNACKI, REYNOLDS,
DOHERTY AND PRATT

*Randall J. Chioini* with permission
_____
Randall J. Chioini P70686
Attorneys for E. Gilbert & Sons, Inc.

SCHAFER & WEINER, PLLC

*Michael E. Baum* with permission
_____
Michael E. Baum (P29446)
Attorneys for FN Building, LLC and
Northern Group, Inc.

20

## Acceptance of Receivership

O'Keefe & Associates Consulting, LLC accepts the duties of the Receiver as set forth in this Amended and Restated Order and agrees to submit to the personal jurisdiction of the Court.

By:_____

Patrick M. O'Keefe

Its:    Member

Dated: December _____, 2009

## EXHIBIT A

### Legal Description of Real Estate

Real estate located in the City of Detroit, Wayne County, State of Michigan, described more particularly as follows: Lots 50, 51, 52, 53, 92, 93, and 94, in Section 1 Governor and Judges Plan, according to the plat thereof as recorded in Liber 34, page(s) 550 of Deeds, Wayne County Records, together with that part of the vacated alley described as: Beginning at the intersection of the South line of Cadillac Square (200 feet wide) with the west line of Bates Street (60 feet wide), said point being the northeasterly corner of Lot 48 and said section 1 of Governor and Judges Plan; thence south 89 degrees 51 minutes west, along the south line of Cadillac Square, 120 feet to a point, said point being the northeasterly corner of Lot 50, thence south 0 degrees 17 minutes east, along the east line of said Lot 50, 100.00 feet to a point on the north line of public alley (20.00 feet wide), said point being the northeasterly corner and the point of beginning of parcel herein described; thence South 0 degrees 17 minutes east 20.00 feet a point on the south line of said public alley; thence south 89 degrees 51 minutes west along the south line of said public alley, 53.72 feet to a point of angle; thence south 29 degrees 25 minutes 50 seconds west along the southeasterly line of said public alley, 30.20 feet to a point; thence north 0 degrees 17 minutes west 46.25 feet to a point on the northerly line of said public alley; thence north 89 degrees 51 minutes east, along the northerly line of said public alley, 68.72 feet to the place of beginning, being all that portion of the public alley situated between the rear of Lots 50 and 51, and the rear of Lots 92, 93, and 94 and the vacated alley between the three last mentioned lots, all in Section 1 of the Governor and Judges Plat of the City of Detroit and being that portion of the existing alley now bridged by the National Bank Building under permit authorized by this Common Council on, to-wit: May 31, 1927 as set forth in Resolution recorded in Liber 10519, page 39, and together with the Easement for light, air and view through, over and across all that part of the southerly eight inches of Lot 54 and the Northerly 10 feet 4 inches of Lot 55, Section 1, Governor and Judges Plat of the City of Detroit, that is in excess of 58 feet above ground as reserved in Deed recorded in Liber 9250, pages 314, 315, 316 and 317, Wayne County Records.

Parcel ID: WARD 1, TAX ITEM 4105

Commonly known as: 660 Woodward Avenue, Detroit, Michigan

22