# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re

**FN BUILDING, LLC**,

      Debtor.

_____/

Case No. 11-46947
Chapter 11
Hon. Marci B. McIvor

### ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF

This matter coming before the Court on the motion, dated June 24, 2011 (the "Sale Motion")[1] (Docket No. 150) of FN Building, LLC (the "Debtor") for, among other things, the entry of an order (the "Sale Order"), pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Michigan: (1) authorizing and approving the Purchase Agreement dated as of April 4, 2011 by and between 660 Woodward Associates, LLC, a Michigan limited liability company, as purchaser ("Purchaser"), and the Debtor, as seller, as amended by that First Amendment to Purchase Agreement between Purchaser and the Debtor dated June 16, 2011, each in the form attached hereto as Exhibit 1 (including all exhibits, schedules and ancillary

---

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the meanings ascribed to them in the Agreement.

agreements related thereto, the "Agreement"[2]), whereby the Debtor has agreed to sell, assign, transfer, and convey the "Property" (as defined in the Agreement) and the Assumed Agreements (as defined below) to the Purchaser (collectively, the "Sale Transaction"); (2) authorizing and approving the sale by the Debtor of the Property free and clear of all liens, claims, Encumbrances and interests; (3) authorizing the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases of the Debtor in connection with the Sale Transaction identified on Exhibit 2 to this Sale Order (collectively, the "Assumed Agreements"); and (4) granting other related relief; the Court having conducted a hearing on the Sale Motion on July 19, 2011 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; the Court having reviewed and considered (a) the Sale Motion and all of the exhibits thereto, (b) the Agreement, and (c) the arguments of counsel made, and evidence proffered or adduced, at the Sale Hearing; and due notice of the Sale Motion having been provided to all parties who requested or are entitled to such notice; objections to the Sale Motion having been timely filed by (i) Statewide Disaster Restoration, Inc. (Docket No. 174), (ii) E. Gilbert & Sons, M.J. White & Son, Inc., and Michielutti Bros., Inc. (Docket No. 175), and (iii) O'Keefe & Associates Consulting LLC, as Receiver (the "Receiver") (Docket No. 177) (each of objections identified in (i), (ii) and (iii) collectively, the "Objections"); and no other objections to the Sale Motion, the relief granted in the Sale Motion, this Sale Order, or the relief granted in this Sale Order having been timely filed or otherwise made; and the Court having concluded that all of the relief requested in the Sale Motion is in the best interests of the Debtor, its estate and creditors, and all other parties in interest; and upon the complete record of

---

[2] As used in this Sale Order, the defined term "Agreement" includes the Purchase Agreement as amended by the First Amendment to Purchase Agreement, and all exhibits, schedules and

the Sale Hearing and this chapter 11 case; and after due deliberation thereon; and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

A.      This Court has jurisdiction over the Sale Motion, the transactions contemplated by the Agreement and all other ancillary documents and agreements related thereto, and the Sale Transaction, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of this chapter 11 case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

C.      The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### SOUND BUSINESS PURPOSE

D.      The Debtor seeks to sell, assign, transfer and convey the Property and the Assumed Agreements to the Purchaser, and the Purchaser seeks to purchase and acquire the Property and the Assumed Agreements from the Debtor, pursuant to the Agreement and this Sale Order.

---

ancillary agreements related thereto.

E.     The Debtor has demonstrated, and the Agreement and the relief requested in the Sale Motion reflects, both (1) good, sufficient, and sound business purposes and justifications for the Sale Transaction, and (2) compelling circumstances for the Sale Transaction outside of the ordinary course of the Debtor's business pursuant to section 363(b) of the Bankruptcy Code, inasmuch as the value obtained as a result of the Sale Transaction will result in a prompt and substantial reduction of the Debtor's secured indebtedness.  Accordingly, time is of the essence in consummating the Sale Transaction.

F.     The consummation of the Sale Transaction pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a plan of reorganization.  The Sale Transaction does not constitute a *sub rosa* or *de facto* plan of reorganization.

G.     The Agreement was not entered into, and neither the Debtor nor the Purchaser has entered into the Agreement, or propose to consummate the Sale Transaction, for the purpose of hindering, delaying, or defrauding the Debtor's creditors.  Neither the Debtor nor the Purchaser has entered into the Agreement or propose to consummate the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

### HIGHEST AND BEST OFFERS

H.     The sale process undertaken by the Debtor provided a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Property.

I.     As demonstrated by the testimony and/or other evidence proffered or adduced at the Sale Hearing (1) the Debtor has actively adequately marketed the Property

(including the Assumed Agreements) for sale; (2) the purchase price contained in the Agreement constitutes the highest and otherwise best offer for the Property and the Assumed Agreements and provides fair and reasonable consideration, and reasonably equivalent value in exchange, for the Property and the Assumed Agreements; (3) the Sale Transaction will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other practical available alternative including, without limitation, liquidation under chapter 7 or chapter 11 of the Bankruptcy Code; (4) a private sale of the Property and the Assumed Agreements pursuant to the Sale Transaction, as opposed to a public sale, is in the best interests of the Debtor's estate and its creditors because it will result in a significant reduction of the Debtor's indebtedness to its primary secured creditor; (5) no other party has offered to purchase the Property for greater economic value to the Debtor or its estate; and (6) the Agreement and the consideration to be paid by the Purchaser under the Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, and the District of Columbia. The Debtor's determination that the Agreement constitutes the highest and best offer for the Property and the Assumed Agreements constitutes a reasonable, valid, and sound exercise of the Debtor's business judgment.

### BEST INTEREST OF CREDITORS

J.      Approval of the Agreement and the consummation of the Sale Transaction at this time are in the best interests of the Debtor, its creditors, the estate and other parties in interest.

## GOOD FAITH

K.　　The Purchaser is not an "insider" of the Debtor, as that term is defined by section 101(31) of the Bankruptcy Code.

L.　　The Agreement and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Debtor and the Purchaser in good faith, without collusion, and from arm's-length bargaining positions. The Purchaser has proceeded in good faith in all respects in connection with this proceeding and the Sale Transaction, is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided; that would tend to hinder or delay creditors; or impose costs and damages under section 363(n) of the Bankruptcy Code.

## NOTICE OF THE SALE MOTION AND THE CURE AMOUNTS

M.　　As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate, and sufficient notice of the Sale Motion and the Sale Hearing has been provided by the Debtor; (2) such notice was good, sufficient, and appropriate under the particular circumstances of this case; and (3) no other or further notice of the Sale Motion, the proposed Sale Transaction or the Sale Hearing is necessary or shall be required. A reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

(i)　　those creditors appearing on the List of 20 Largest Creditors Holding Unsecured Claims in this case;[3]

---

[3] No committee of unsecured creditors has been appointed in this Bankruptcy Case.

(ii)     FNB Detroit 2010, LLC, the Debtor's lender;

(iii)    Zul Capital, LLC;

(iv)     Skyloft, LP;

(v)      Alexander Dembitzer and Jacqueline Fried;

(vi)     counsel for the Receiver;

(vii)    all nondebtor parties to the Assumed Agreements;

(viii)   all parties who are known or reasonably believed to have asserted a lien, Encumbrance, claim or other interest in the Property or the Assumed Agreements;

(ix)     the Internal Revenue Service;

(x)      all applicable state and local taxing authorities;

(xi)     the Office of the United States Trustee for the Eastern District of Michigan;

(xii)    the Environmental Protection Agency;

(xiii)   the U.S. Department of Labor and the Michigan Department of Labor;

(xiv)    the United States Attorney;

(xv)     the Michigan Attorney General;

(xvi)    the Michigan Department of Environmental Quality;

(xvii)   Corporation Counsel for Wayne County, Michigan;

(xviii)  Corporation Counsel for the City of Detroit, Michigan;

(xix)    the Michigan Department of Treasury;

(xx)     the Michigan Department of Labor and Economic Growth;

(xxi)    the Wayne County, Michigan, Treasurer;

(xxii)   the City of Detroit, Michigan, Treasurer;

(xxiii)  the Assessor's Office for the City of Detroit, Michigan;

(xxiv)   all attorneys who have filed notices of appearance in this chapter 11 case;

(xxv) all entities that have requested notice in this chapter 11 case under Bankruptcy Rule 2002;

(xxvi) all of the employees of the Debtor;

(xxvii) all persons and entities identified in paragraph 28 of this Sale Order; and

(xxviii) all other parties identified on the creditor matrix in this case.

N.    With regard to (1) all parties who have Claims against the Debtor but whose identities are not reasonably ascertainable by the Debtor, and (2) all other persons or entities, the Court finds that notice of the Sale Transaction was sufficient and reasonably calculated under the circumstances to reach such parties, persons, and entities.

O.    The Debtor has served notice of its intent to assume and assign the Assumed Agreements and of the related proposed Cure Costs (the "Contract and Cure Schedule") upon each nondebtor counterparty to each of the Assumed Agreements.    The Contract and Cure Schedule is attached to this Sale Order as Exhibit 2.    The service of such notice was good, sufficient, and appropriate under the circumstances and no other or further notice need be given with respect to the Cure Costs for the Assumed Agreements listed in the Contract and Cure Schedule and the assumption and assignment of the Assumed Agreements. All nondebtor counterparties to the Assumed Agreements have had a full and fair opportunity to object to both the Cure Costs listed in the Contract and Cure Schedule and the assumption and assignment of the Assumed Agreements (including objections related to adequate assurance of future performance and objections based on whether applicable law excuses the nondebtor counterparty to each of the Assumed Agreements from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).

## SECTION 363(f) REQUIREMENTS MET FOR FREE AND CLEAR SALE

P.      The Debtor may sell the Property to the Purchaser free and clear of all liens, claims, interests and Encumbrances of every kind and nature whatsoever (collectively, "Claims") because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.   The assumption and assignment of each of the Assumed Agreements is also free and clear of all Claims other than the payment of Cure Costs pursuant to the Contract and Cure Schedule and in accordance with Section 8 of the Agreement. The holders of Claims who did not object, or who withdrew their objections, to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.   Those holders of Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale Transaction, subject to any defenses of the Debtor.

Q.      The Debtor is the sole and lawful owner of the Property and no other person has any ownership right, title, or interest therein.

R.      All holders of Claims are adequately protected, and the Sale Transaction thus satisfies section 363(e) of the Bankruptcy Code, by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force, and effect that such Claim-holder had prior to the Sale Transaction, subject to any rights, claims, and defenses of the Debtor and its estate.

S.      The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Property and the Assumed Agreements were not free and clear of all Claims or if the Purchaser would, or in the future could, be liable for any such Claims.

T.      The Sale Transaction shall not impose or result in the imposition of any liability or responsibility of the Purchaser or its affiliates, successors or assigns or any of their assets (including, without limitation, the Property), and the transfer of the Property to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or any of their assets (including, without limitation, the Property), to any liability for any Claims including, without limitation, successor liability or any products liability.

## ASSUMPTION AND ASSIGNMENT OF THE ASSUMED AGREEMENTS

U.      The assumption and assignment to the Purchaser of the Assumed Agreements are integral to the Agreement, are in the best interests of the Debtor and its estate, and represents the reasonable exercise of the Debtor's sound business judgment.

V.      With respect to each of the Assumed Agreements, the Debtor has met all requirements of section 365(b) of the Bankruptcy Code.  Further, the Purchaser has provided all necessary adequate assurance of future performance under the Assumed Agreements in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, the Assumed Agreements can and shall be assumed by the Debtor and assigned to the Purchaser, as provided for in the Sale Motion and the Agreement, free and clear of all Claims.

## VALIDITY OF THE TRANSFER

W.      As of the closing of the Sale Transaction (as further defined in the Agreement, the "Closing"), the transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property, and will vest the Purchaser with all right, title and interest

of the Debtor in and to the Property, free and clear of (1) all Claims and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including, but not limited to, any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise.

X.     The Debtor (1) has full limited liability company power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary limited liability company action of the Debtor, (2) has all of the limited liability company power and authority necessary to consummate the transactions contemplated by the Agreement, (3) has taken all actions necessary to authorize and approve the Agreement and the consummation by the Debtor of the transactions contemplated thereby, and (4) no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate such transactions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### GENERAL PROVISIONS

1.     The Sale Motion is granted in all respects and the Sale Transaction is approved as set forth in this Sale Order.

2.     The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule

7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      Each of the Objections (and any other objections to the Sale Motion, the Sale Transaction, the relief requested in the Sale Motion, or the relief granted in this Sale Order), and any objections to assumption and assignment of the Assumed Agreements by nondebtor counterparties to the Assumed Agreements, that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby fully overruled on the merits, except as expressly provided herein.

<u>**APPROVAL OF THE AGREEMENT AND THE SALE TRANSACTION**</u>

4.      The Agreement, all transactions contemplated therein, and all of the terms and conditions thereof, are hereby approved in all respects.

5.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with each of the terms of the Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Order.

6.      The Debtor, as well as its affiliates, officers, employees and agents, are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be (a) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession,

the Property and the Assumed Agreements, (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, and (c) as may be reasonably requested by the Purchaser to implement the Agreement and consummate the Sale Transaction in accordance with the terms thereof, all without further order of the Court.

7.     This Sale Order and the Agreement shall be binding in all respects upon the Purchaser, the Debtor and its affiliates, any trustee appointed in the Debtor's Bankruptcy Case (whether under chapter 7 or chapter 11 of the Bankruptcy Code), all creditors (both known and unknown) of the Debtor, all interested parties and their successors and assigns, including, but not limited to, any person or entity asserting a Claim against the Debtor, the Property, and/or the Assumed Agreements, and all nondebtor counterparties to each of the Assumed Agreements.

8.     Nothing contained in any chapter 11 plan confirmed in this Bankruptcy Case, or any order confirming any such chapter 11 plan, or any order entered in any subsequent case under chapter 7 of the Bankruptcy Code with respect to the Debtor, shall conflict with or derogate from the provisions of the Agreement and this Sale Order, and to the extent of any conflict or derogation between the Agreement and this Sale Order and any such plans or orders, the terms of the Agreement and this Sale Order shall govern and control in all respects.

### TRANSFER OF DEBTOR'S PROPERTY

9.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Property to the Purchaser in accordance with the terms of the Agreement.  The Property shall be transferred to the Purchaser, and upon consummation of the Agreement, such transfer shall (a) be valid, legal, binding and effective; (b) vest the Purchaser with all right, title, and interest of the Debtor in and to the Property; and (c) be free and clear of all Claims, with all Claims to attach to the net proceeds of the Sale Transaction in the order of

their priority, and with the same validity, force and effect, which they now have against the Property, subject to any claims and defenses the Debtor may possess with respect thereto.

10.     Except as otherwise provided in the Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, and trade and other creditors, holding Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the Assumed Agreements, the operation of the Debtor's business prior to Closing, or the transfer of the Property and the Assumed Agreements to the Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims against the Purchaser, its successors or assigns, its property or the Property or the Assumed Agreements.  No such persons or entities shall assert against the Purchaser or its successors in interest any liability, debt, claim, or obligation arising from, related to, or in connection with the ownership or operation of the Property or the Assumed Agreements prior to the Closing.

11.     On or about December 16, 2009, the Circuit Court for the County of Wayne, State of Michigan, entered a *Stipulated Amended and Restated Order Appointing Receiver* in a mortgage foreclosure action with respect to the Property, pending before that court, captioned *National City Bank v. FN Building, LLC, et al.*, and docketed by that court as case no. 09-021031-ck (the "Receivership Order").  The Receiver was appointed receiver of the Property pursuant to the Receivership Order.  The Receiver is a custodian of property of the estate in accordance with section 101(11)(A) of the Bankruptcy Code.  The Property and the Assumed Agreements will be sold, assigned, transferred and conveyed to the Purchaser free and clear of

the Receivership Order and all interests, Claims, obligations, duties, authorities, and powers of the Receiver pursuant to the Receivership Order and applicable law. No further order of the Circuit Court for the County of Wayne, State of Michigan, or any other court or agency or governmental or regulatory authority, is necessary or required in order to cause the Property and Assumed Agreements to be so sold, assigned, transferred, and conveyed to the Purchaser in accordance with the Agreement and this Sale Order.

12. This Sale Order (a) is effective as a determination that, as of Closing, all Claims relating to the Property and the Assumed Agreements have been unconditionally released, discharged, and terminated, and that the transfers, assignments, and conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

13. If any person or entity that has filed financing statements, mortgages, mechanic's liens, construction liens, other liens, *lis pendens*, or other documents or agreements evidencing Claims against or in the Debtor or the Property and/or the Assumed Agreements shall not have delivered to the Debtor, prior to the Closing, in proper form for filing and executed by

the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims and interests which such person or entity asserts or has with respect to the Debtor or the Property, the Assumed Agreements, or otherwise, then only with regard to Property and the Assumed Agreements that are purchased by the Purchaser pursuant to the Agreement and this Sale Order, (a) the Debtor and the Purchaser are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Property and the Assumed Agreements.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state and local government agency, department or office.

14.    The Purchaser is hereby authorized to execute and deliver such other documents, statements, instruments and notices which may be necessary or desirable to fully consummate the Agreement and the Sale Transaction.

15.    All persons or entities in actual or constructive possession of some or all of the Property are directed to surrender possession of the same to the Purchaser or its designee at the time of Closing of the Sale Transaction.

16.    Following the Closing, no holder of any Claims shall interfere with the Purchaser's title to or use and enjoyment of the Property and/or the Assumed Agreements based on or related to any such Claims, or based on any actions the Debtor has taken or may take in this Bankruptcy Case.

17.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Property and the Assumed Agreements to the Purchaser in accordance with the Agreement and this Sale Order.

18.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred and conveyed to the Purchaser on account of the filing or pendency of this Bankruptcy Case or the consummation of the Sale Transaction.

## ASSUMPTION AND ASSIGNMENT OF ASSUMED AGREEMENTS

19.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and in accordance with the terms and conditions of the Agreement, the Debtor's assumption and assignment to the Purchaser of each of the Assumed Agreements listed on Exhibit 2 is hereby approved, and all requirements of section 365 of the Bankruptcy Code are hereby deemed fully satisfied.

20.     The Debtor is hereby authorized and directed, in accordance with sections 105(a) and 365 of the Bankruptcy Code and pursuant to the terms and conditions of the Agreement, to assume and assign each of the Assumed Agreements to the Purchaser free and clear of all Claims, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Agreements to the Purchaser.

21.     The Assumed Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any of the Assumed Agreements (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.   There shall be no accelerations, assignment fees,

increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption or assignment of the Assumed Agreements. No Assumed Agreement may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" or like clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

22.     The Cure Costs under each of the Assumed Agreements arising or accruing prior to the date of this Sale Order are shown on attached Exhibit 2. On or before the Closing, the Debtor and the Purchaser are authorized and directed to, and therefore shall, pay all Cure Costs in accordance with the terms of this Order and Section 8 of the Agreement.

23.     Payment of the Cure Costs, in accordance with the terms and conditions of the Agreement and attached Exhibit 2, shall be a full and final satisfaction of any and all defaults and nonperformance by the Debtor under the Assumed Agreements, whether monetary or non-monetary. Each nondebtor party to each Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtor or the Purchaser, their successors or assigns, or the property of any of them (including, without limitation, the Property), any default based on all known and unknown facts and circumstances existing as of the date of the Closing of the Sale Transaction regardless of whether such default was raised or asserted prior to or at the Sale Hearing. Notwithstanding the foregoing and for the avoidance of doubt, all of the Debtor's rights to assert, and interests in, all credits, charge-backs, setoffs, recoupments, rebates and other claims under and/or relating to the Assumed Agreements are purchased by and assigned to the Purchaser and are preserved for the Purchaser's sole benefit.

24.     The failure of the Debtor or the Purchaser to enforce, at any time, one or more terms or conditions of any of the Assumed Agreements shall not be a waiver of such terms

or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

25.     Upon the Closing of the Sale Transaction, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assumed Agreements.

26.     The assignments of each of the Assumed Agreements are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

27.     To the extent not assumed by the Purchaser, all contracts and agreements to which the Receiver and its agents, including, without limitation, Finsilver/Freidman Management Corporation, are a party relating to operation and/or management of the Property shall be deemed terminated upon the Closing without liability of any kind or nature to the Receiver and/or the Receiver's agents, or the Purchaser.

## PAYMENTS AND DISBURSEMENTS TO BE MADE FROM PURCHASE PRICE AT CLOSING

28.     The following payments shall be made at Closing from the Purchase Price paid by the Purchaser pursuant to the Agreement:

(a)     all unpaid taxes and assessments, supplemental and special tax assessments, charges, interest, and penalties due and owing with respect to the Property for the period preceding the Closing Date, and all such other taxes and payments which are due or may become due as a result of the sale of the Property pursuant to the Agreement;

(b)     all unpaid claims of the following construction lien claimants pursuant to the following –

(i)     construction lien in the amount of $183,819.58, filed against FN Building, LLC by Michielutti Bros., dated January 9, 2008 and recorded April 30, 2008 in Liber 47193, Page 1215 as affected by the terms, conditions and provisions of Default Judgment, dated November 14, 2008 and recorded September 10, 2009 in Liber 48110, Page 405, in full and final satisfaction of its construction lien and all its other claims (as defined in 11 U.S.C. § 101(5)) with respect to the Property, and

(ii)     construction lien in the amount of $189,480.77 filed against FN Building, LLC by E. Gilbert and Sons, Inc., dated April 30, 2008 and recorded May 2, 2008 in Liber 47201 on Page 800, amended, dated September 25, 2008 and recorded September 26, 2008 in Liber 47488 on Page 845, in full and final satisfaction of its construction lien and all its other claims (as defined in 11 U.S.C. § 101(5)) with respect to the Property.[4]

(c)     all amounts due to the Detroit Water and Sewerage Department or any other entity for water used with respect to the Property through the Closing, in full and final satisfaction of any lien such entity(ies) may have and all of its (their) other claims (as defined in 11 U.S.C. § 101(5)) with respect to the Property;

(d)     $7,000.00 to M.J. White & Son, Inc., in full and final satisfaction of any lien such entity may have and all of its other claims (as defined in 11 U.S.C. § 101(5)) with respect to the Property; and

(e)     all amounts determined by the Title Company as necessary to cause the Title Company to issue and deliver to Purchaser, at Closing, a marked-up copy of the Title Insurance Commitment in accordance with section 5 of the Agreement including, without limitation, all amounts necessary to pay the cost of any affirmative coverage necessary or required to insure all exceptions detailed in Purchaser's Title Report Objection Notice dated April 26, 2011.

---

[4] In accordance with an *Order Granting Plaintiff's, Michieultti Bros., Inc.'s Motion for Entry of Default Judgment Pursuant to MCR 2.603(B) and Defendant/Counter and Cross-Plaintiff/Third-Party Plaintiff, E. Gilbert and Sons, Inc.'s Motion Confirming Priority of its Construction Lien*, entered on August 11, 2008 by the Circuit Court for Wayne County, Michigan in the matter of *Michieultti Bros., Inc. v. FN Building, LLC, et al.* case no. 08-120229-CH, these construction liens of Michieultti Bros., Inc. and E. Gilbert and Sons, Inc. have "priority over" and are "senior to" the "mortgage interest of National City Bank, which arises out of the Mortgage recorded at Liber 44228 and Page 395 of the Wayne County Records and the Assignment of Leases and Rents recorded at Liber 4428 and Page 415 of the Wayne County Records." The referenced mortgage interest of National City Bank was assigned to FNB Detroit 2010, LLC.

29. The Debtor shall also cause the following transfers to be made at Closing, by the Title Company, from the Purchase Price:

(a) $100,000.00 shall be transferred to the client trust account of Goldstein Bershad & Fried P.C., counsel for the Debtor, and subsequently transferred to any chapter 7 trustee of the Debtor, to be administered as part of the Debtor's estate after this case is converted to a case under chapter 7 of the Bankruptcy Code following the Closing; and

(b) such amount, as is reasonably estimated by the Receiver, to O'Keefe & Associates Consulting, LLC, to pay (i) any unpaid, allowed fees and expenses of professional persons employed in this Bankruptcy Case in accordance with section 327 of the Bankruptcy Code, plus (ii) all unpaid amounts which are or may become due and owing by the Receiver, with respect to the Property, through the date prior to the Closing Date.

In the event that any of the funds remitted to Goldstein Bershad & Fried P.C. and the Receiver pursuant to this paragraph 28 are not used for the purposes specified in paragraphs 28(a) and 28(b) above, the balance of such funds shall be remitted to FNB Detroit 2010, LLC.

30. With respect to payments made or obligations incurred by the Receiver for certain improvements to the facade of the building situated on the Real Property, paragraph 17 of the First Amendment to Purchase Agreement is replaced with the following paragraph:

If, during the period of June 7, 2011 through the Closing (the "Facade Repair Period"), O'Keefe & Associates Consulting, LLC, the Receiver of the Property, uses funds of the Seller's bankruptcy estate or incurs obligations to cause repairs to be made to the facade of the building situated on the Real Property pursuant to the Bankruptcy Court's Order Under 11 U.S.C. § 105(a) Seeking Clarification of Final Cash Collateral Order and/or Authority to Use Cash Collateral for Façade Inspection and Repairs [Docket No. 130] ("Facade Repairs"), the Purchase Price will be increased, dollar-for-dollar, by the amount actually so expended or so incurred by the Receiver for Facade Repairs during the Facade Repair Period, up to $350,000.00 in the aggregate. Such amount shall be: (i) determined by the Receiver but in all respects subject to the Receiver's first providing to the Purchaser documentation evidencing, in the Purchaser's reasonable discretion,

that any amount to be paid by the Purchaser pursuant to this Paragraph has actually been remitted or incurred by the Receiver for Facade Repairs made during the Facade Repair Period; and (ii) disbursed to the Receiver from the Purchase Price at Closing.

This new paragraph 17 of the First Amendment to Purchase Agreement, and the payments to be made thereunder, are approved.

31.     The balance of the Purchase Price, after payment in full of all amounts identified in paragraphs 28 through 30 above, to FNB Detroit 2010, LLC.

32.     The payments and disbursements to be made at Closing pursuant to paragraphs 28 through 31 above comply with the order of priorities of payments mandated by the Bankruptcy Code and applicable law, and, therefore, no creditor or party in interest is unfairly discriminated against, or will be deprived of any right, as the result of the making of such payments and disbursements.

33.     Notwithstanding the provisions of paragraphs 28 through 31 above, all of the Property and the Assumed Agreements will be sold, assigned, transferred and conveyed to the Purchaser free and clear of all Claims pursuant to sections 363 and 365 of the Bankruptcy Code, and all such Claims will attach to the proceeds of the Sale to the same extent, priority and validity that existed as of the date of commencement of this Bankruptcy Case.  The failure to make any payment, or satisfy any Claim at Closing, whether accrued or unaccrued, known or unknown, and including, but not limited to, the payments set forth in paragraphs 28 through 31 above, will not (a) modify, condition, or restrict the nature of the Sale Transaction as being free and clear of all Claims or (b) impose upon the Purchaser any liability for any Claim which may be or become due and owing with respect to the Property and/or the Assumed Agreements, through the Closing, other than as and to the extent expressly provided in the Agreement.

34.    The Debtor is the landlord and Honigman Miller Schwartz and Cohn LLP ("Honigman") is the tenant pursuant to a certain unexpired lease of a portion of the Real Property (the "Honigman Lease").  The Honigman Lease is one of the Assumed Agreements.

35.    Effective only upon the Closing of the Agreement and the assignment of the Honigman Lease to the Purchaser pursuant to this Sale Order and the Agreement, Honigman waives any claims, including derivative claims, it has against the Debtor, FNB Detroit 2010, LLC ("FNB Detroit"), and all members, principals, insiders, and affiliates of the Debtor and FNB Detroit and their officers, directors, managing members, and employees (collectively, the "Debtor Parties"), relating to (a) the Honigman Lease, (b) the Real Property, (c) any prepetition litigation involving Honigman and the Debtor, and (d) this bankruptcy proceeding, including any objection to claims of the Debtor Parties in this bankruptcy proceeding.

36.    If the Closing of the Agreement occurs and the Honigman Lease is assumed by the Debtor and assigned to the Purchaser in accordance with the Agreement and this Sale Order, then, effective only upon the Closing and the assignment of the Honigman Lease to the Purchaser, the Debtor, on behalf of itself and any subsequently appointed trustee in this chapter 11 case or any subsequent chapter 7 case, and on behalf of the Debtor's past, present, and future beneficiaries, successors and assigns, and any of their parents, subsidiaries, affiliates, related companies, officers, directors, members, partners, shareholders, principals, employees,

---

[5]   In the event that the Closing of the Agreement and consummation of the Sale Transaction between the Debtor and Purchaser does not occur in accordance with the Agreement, each of the provisions provided in the Sale Motion at paragraphs 42 through 45 thereof, and as further set forth in the Court's Orders at Docket Nos. 107, 108 and 148, related to an "Acceptable Alternative" transaction, are deemed fully approved.

representatives, attorneys, legal representatives, insurers, agents, servants, contractors and predecessors (collectively, the "Debtor Releasors"), releases, acquits and forever discharges Honigman and its past, present and future beneficiaries, successors, assigns, officers, directors, shareholders, employees, representatives, members, partners, attorneys, legal representatives, insurers, reinsurers, agents, contractors, predecessors, and related entities (collectively, the "Honigman Released Parties") from any and all manner of claims, counterclaims, actions, causes of action, liabilities, lawsuits, debts, injuries, sums of money, attorney's fees, controversies, costs, damages, judgments, proceedings, demands, agreements, promises, representations, duties and obligations, past or present, asserted or unasserted, known or unknown, suspected or unsuspected, contingent or fixed, direct or derivative, choate or inchoate, based on acts or omissions of any kind, in law, equity, or otherwise, whether based in contract, equity, tort, negligence, intentional tort, warranty (express or implied), strict liability, fraud, consumer fraud, criminal law, by statute, other legal or equitable theory, or otherwise, based on acts or omissions of any of the Honigman Released Parties relating in any way to the Debtor arising prior to the closing (the "Debtor Released Claims"). The Debtor Released Claims include but are not limited to claims (a) arising under any lease with Honigman, including, without limitation, the Honigman Lease, (b) arising under or related to Honigman's occupancy of the Real Property, (c) arising under or related to any relationship between Honigman and the Debtor Releasors, and (d) arising under chapter 5 of the Bankruptcy Code.

37.     If, for any reason, the Closing in accordance with the Agreement and this Sale Order does not occur and the Honigman Lease is not assumed by the Debtor and assigned to the Purchaser, then, despite any provision to the contrary in any order of this Court, including, without limitation, this Sale Order: (a) Honigman shall not have released, acquitted, or

discharged any of the claims against the Debtor Parties described in paragraph 35 of this Sale Order; (b) no proceeds from any sale, cash collateral or any other proceeds can be distributed to the Debtor Parties without appropriate notice and opportunity to object first being given to all parties in interest and after hearing and entry of an order by this Court; (c) the Debtor may not release any claims or rights it has against any of the Debtor Parties without appropriate notice and opportunity to object first being given to all parties in interest and after hearing and entry of an order by this Court; (d) Honigman is entitled to conduct the discovery that it requested in the 2004 Motion (Docket No. 67), subject to Debtor's objection that it has no ability to produce three of the four named individuals; and (e) the Debtor's creditors' (including, but not limited to, Honigman) and the Debtor's estate's rights are fully preserved with respect to: (i) the assertion of claims against the Debtor Parties; (ii) the objection to claims filed and/or asserted in this bankruptcy case and the classification and treatment of such claims; (iii) the objection to the assumption and assignment of leases; (iv) seeking the subordination/recharacterization of claims; (v) the pursuit of the recovery of insurance proceeds; (vi) pursuing any causes of action including claims against any and all of the Debtor Parties; and (vii) challenging the validity of liens, priority of claims, interests, distribution schemes, or any other matters; and (f) all of the Debtor Released Claims are reinstated.

38. The Debtor's Contract and Cure Schedule is hereby deemed revised to the limited extent that the Cure Cost associated with the assumption and assignment of the Honigman Lease, which was listed by the Debtor, in the Contract and Cure Schedule, as "unknown," is revised and scheduled at $1,659,352.72 (the "Honigman Lease Cure Cost"). The Honigman Lease Cure Cost shall be treated as if it was stated in the original Contract and Cure Schedule as the cure obligation associated with the Honigman Lease. If, for any reason, the

Closing in accordance with the Agreement and this Sale Order does not occur and the Honigman Lease is not assumed by the Debtor and assigned to the Purchaser, then, the Debtor Releasors shall have the right to dispute the amount of the Honigman Lease Cure Cost.

<u>**A**DDITIONAL **P**ROVISIONS</u>

39.     If there is a conflict between the terms of this Sale Order and the Order Resolving Objection to Sale Motion and Regarding Sale Proceeds (the "<u>Statewide Order</u>"), the Statewide Order shall govern and supersede this Order; <u>provided</u>, that the Statewide Order relates exclusively to Statewide Disaster Restoration, Inc.'s claim to a certain portion of the proceeds of the Sale Transaction and does not and will not, in any way, modify or limit (a) any of the provisions of this Sale Order which relate to the nature, extent, or validity of the Sale Transaction and, without limitation, the transfer to Purchaser of the Property and the Assumed Agreements free and clear of all Claims including any Claims of Statewide Disaster Restoration, Inc., (b) Purchaser's rights and the Debtor's and FNB Detroit 2010, LLC's duties and obligations to Purchaser under the Agreement and this Sale Order, (c) the consideration provided to Purchaser pursuant to the Agreement and the Sale Order taken as a whole, or (d) any of the provisions of this Sale Order which relate to Honigman, the Honigman Released Parties or the Honigman Released Claims,  including paragraphs 34 through 38 of this Sale Order.

40.     Except as expressly set forth in the Agreement, the Purchaser and its successors or assigns shall not be liable for any liability, claim (as that term is defined in section 101(5) of the Bankruptcy Code), damages or other obligation of or against the Debtor related to the Property by reason of the transfer of the Property to the Purchaser, or otherwise.   The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Property, to: (a) be a legal successor, or otherwise deemed a successor to the Debtor (other than with respect to any obligations arising under the Assumed Agreements from and after the

Closing); (b) have, *de facto* or otherwise, merged with or into the Debtor; (c) be a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor; or (d) have any liability whatsoever under any theory of, without limitation, environmental, labor and employment, products or antitrust liability, whether known or unknown at the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

41.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing any action or proceeding, at law or in equity, against the Purchaser, its affiliates, successors and assigns, or the Property, with respect to any (a) Claim or (b) successor liability of the Purchaser for the Debtor.

42.     Effective upon the Closing, no default, breach, or claim of non-performance shall exist under any of the Assumed Agreements and no nondebtor counterparty to any of the Assumed Agreements shall be permitted to declare a default, breach, or nonperformance by the Purchaser or otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any duty or obligation under any of the Assumed Agreements.

43.     While the Debtor's Bankruptcy Case, or any subsequent chapter 7 bankruptcy case of the Debtor, is pending, this Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes related to this Sale Order or the Agreement.

44.     Nothing in this Sale Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order.  Notwithstanding the foregoing sentence, nothing in this Sale Order shall be interpreted to deem the Purchaser as the successor to the Debtor under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Order or for liabilities relating to off-site disposal of waste by the Debtor prior to entry of this Sale Order.

45.     No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Agreement, the Sale Motion and this Sale Order.

46.     The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Purchaser unless such authorization is duly stayed pending such appeal.

47.     The terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate and its creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting claims in the Property to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all

such provisions and terms shall likewise be binding on such trustee (whether under chapter 7 or chapter 11 of the Bankruptcy Code), examiner or receiver and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, its shareholders or any trustee, examiner or receiver.

48. The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

49. The Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Agreement.

50. In the event that there is a direct conflict between the terms of this Sale Order and the Agreement, the terms of this Sale Order shall control.

51. Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

52. As provided by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Sale Order shall not be stayed for 14 days after the entry of the Sale Order and shall be effective immediately upon entry, and the Debtor and the Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Order.

53.     The exhibits to this Sale Order which have been filed on the docket in this chapter 11 case as docket item no. 187, 188 and 189 are fully approved incorporated into this Sale Order.

.

**Signed on July 21, 2011**

```
                    /s/ Marci B. McIvor
                    Marci B. McIvor
                    United States Bankruptcy Judge
```